**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

ALEKSANDR NIKITIN                          CIVIL ACTION NO. 1:26-1455

                                           SECTION P

VS.

                                           JUDGE TERRY A. DOUGHTY

ELEAZAR GARCIA, ET AL.                     MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Petitioner Aleksandr Nikitin,[1] a detainee in the custody of the Department of Homeland

Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions

the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.

[doc. # 5].  For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Russia.  [doc. # 1, p. 3].  He entered the United States of America

on July 16, 2022; he suggests that he was detained and then released from custody on his own

recognizance the same day.  *Id.*

Petitioner "complied with release conditions including reporting, pursuing asylum, and

obtaining work authorization for employment."  [doc. # 1, p. 4].  He "complied with all

requirements set by Respondents in this matter."  *Id.*

---

[1] Petitioner's 'A-Number' is 241-682-367.

[2] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636, and the standing orders of the Court.

On November 4, 2025, an immigration judge ordered Petitioner removed to Russia.  [doc. # 5-2, p. 3].  Petitioner appealed the removal order; his appeal is pending.  [doc. # 5, p. 2].

On October 8, 2026, ICE re-detained Petitioner "during a traffic stop while he was lawfully employed operating a private vehicle as an Uber Delivery Driver."  [doc. # 1, pp. 3-4].

Petitioner filed this proceeding on May 5, 2026.  [doc. # 1].  He claims that the Government is violating his right to substantive due process by continuing to detain him without a bond hearing.  *Id.* at 6.  He maintains that he "met all the guidelines and reporting requirements set forth by the government and that "there is a lack of evidence that he suddenly presents as a risk of flight or danger to the community."  *Id.* at 9.

Respondents opposed the petition on June 16, 2026.  [doc. # 5].  Petitioner filed a reply on June 23, 2026.  [doc. # 6].

### Law and Analysis

### I. Substantive Due Process

Petitioner claims that the Due Process Clause entitles him to a bond hearing.  In *Dzheison Ford v. Timothy Ducote, et al*., 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States.  He was detained for expedited removal.  An asylum officer rejected his credible fear claim.  Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum.  In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause.  Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens.  Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"  140 S. Ct. at 1977.

2

In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.

The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. Petitioner appealed his removal order. Petitioner's appeal is extending his detention until the

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

Board of Immigration Appeals ("BIA") issues a decision.  His detention will likely end (i) when his order of removal becomes final (if the BIA affirms the order of removal or dismisses Petitioner's appeal) and the Government removes him or (ii) if the BIA rules in Petitioner's favor.

Accordingly, the Court should deny Petitioner's claim.  Petitioner may of course re-urge his claim should his detention become indefinite or potentially permanent.

## II. Procedural Due Process

Petitioner claims that the Government is violating his right to *substantive* due process. He titles his claim, "Violation of Fifth Amendment Right to Substantive Due Process."  [doc. # 1, p. 6].  He does, however, alter course at the end of his pleading and mention that the Government is violating his right to procedural due process.  *Id.* at 9.  He argues that the factors in *Mathews v Eldridge*, 424 U.S. 319, 335 (1976), "weigh heavily in his favor[.]"  *Id.*

Petitioner's claim, however, does not sound in procedural due process.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations."  *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner."  *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)).  "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is

deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

Here, Petitioner does not claim that he lacked notice and an opportunity to be heard or respond before the Government deprived him of any liberty or property interest.  Pre-deprivation notice and an opportunity to be heard are key components of due process.  *Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond.").  Instead, Petitioner appears to claim only that the Government has not afforded him a bond hearing.  [doc. # 1, p. 7].  He maintains, for example, that "there is a lack of evidence that he suddenly presents as a risk of flight or danger to the community." *Id.* at 8-9.

Petitioner essentially argues that by failing to provide him a bond hearing, the Government is risking detaining an individual who is not a flight risk or a danger to society. However, Respondents are statutorily required to detain him under 8 U.S.C. § 1225.  Under 8 U.S.C. 1225(a)(1), "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission."  Here, ICE detained Petitioner when he was present in the United States and had not been admitted. "Presence without admission deems the petitioners to be applicants for admission." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026).

Further, Section 1225 "unambiguously provides for mandatory detention." *Buenrostro-Mendez*, 166 F.4th at 502.  Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer

determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." In addition, Section 1225(b)(2)(A) (emphasis added) provides: "Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."

Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to bond or a bond hearing. All of this is to say that even if a neutral decisionmaker determined that Petitioner was not a flight risk or a danger, Respondents would still detain him.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published. The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6. Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*" *Id.* at 8 (emphasis added). Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders. *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain him and remove

6

him.[4]  Relevant issues, for example, include his identity, citizenship, whether circumstances have changed following his release from detention, whether he was ever admitted or paroled, when he entered this country, whether another country might accept him, and whether he is entitled to asylum or other protection from removal.  *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk.  And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner.  A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").

Accordingly, the Government has not violated Petitioner's right to procedural due process.  The Court should dismiss this claim.

Of note, Petitioner does appear to raise a procedural due process claim with arguable merit in his reply.  For instance, he claims that he lacked notice of his re-detention and an opportunity to contest his re-detention.  [doc. # 6, p. 2].  However, courts do not consider claims raised for the first time in a reply.  *United States v. Sangs,* 31 Fed. Appx. 152, 2001 WL 1747884, at *1 (5th Cir. Dec. 11, 2001).  Petitioner must file leave to file an amended petition or a separate proceeding if he seeks to raise a new claim/ground for relief.

---

[4] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding."  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).  Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant.  Here, to the extent Petitioner contends he is entitled to release for urgent humanitarian reasons or for significant public benefit, he had and has the opportunity to present such a contention in his removal proceedings.  *If* the Secretary of Homeland Security agreed, *then* Petitioner could attempt to demonstrate that he is neither a security risk nor a risk of absconding.

**<u>Recommendation</u>**

For reasons above, **IT IS RECOMMENDED** that Petitioner Aleksandr Nikitin's petition be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 25th day of June, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge

8